**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

_____

**CHARLES E. ADAMS, et al.,**

     **Plaintiffs,**

**v.**                                         **Case No. 1:20-cv-01197-JTF-jay**

**ADIENT US LLC; JOHNSON CONTROLS, INC.;
HOOVER UNIVERSAL, INC.;
MANUFACTURERS INDUSTRIAL GROUP, L.L.C.;
JOHN ZARDIS; ANDRE GIST;
MANUFACTURERS INDUSTRIAL GROUP, LLC;
MIG STEEL FABRICATION, LLC
F/K/A MIG CONSTRUCTION SERVICES, LLC;
MIG ENTERPRISES, LLC;
FICTITIOUS DEFENDANTS A THROUGH Z,**

     **Defendants.**

_____

**MANUFACTURERS INDUSTRIAL GROUP L.L.C.,
JOHN ZARIDS, and ANDRE GIST,**

     **Cross-Plaintiffs,**

v.

**ADIENT US LLC and JOHNSON CONTROLS, INC.,**

     **Cross-Defendants,**

_____

**MANUFACTURERS INDUSTRIAL GROUP, L.L.C.,
JOHN ZARDIS, and ANDRE GIST,**

     **Third-Party Plaintiffs,**

v.

**HOOVER UNIVERSAL, INC.,**

     **Third-Party Defendants.**

1

**ORDER DENYING JCI DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT IN PART, GRANTING JCI DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AS TO PLAINTIFFS' NEGLIGENCE PER SE CLAIMS AND AS TO PLAINTIFFS WHO SERVE AS BUSINESS ENTITIES IN COUNT 2 AND COUNT 3 OF THE NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS, AND DENYING PLAINTIFFS' ALTERNATIVE MOTION TO AMEND THEIR COMPLAINT**

Before the Court is Defendants Hoover Universal, Inc., Adient US LLC, and Johnson Controls, Inc.'s (collectively, the "JCI Defendants") Motion to Dismiss the Second Amended Complaint (the "Motion"), filed on September 8, 2020. (ECF No. 6.) Plaintiffs Charles E. Adams, et al ("Plaintiffs") filed Plaintiffs' Response to JCI Defendants' Motion to Dismiss on February 8, 2021. (ECF No. 33.) Shortly thereafter, Plaintiffs filed an Alternative Motion to Amend their Complaint along with a Memorandum in Support on March 3, 2021. (ECF Nos. 38 & 38-1.) JCI Defendants' Reply in Support of their Motion to Dismiss the Second Amended Complaint was filed on March 8, 2021. (ECF No. 39.) JCI Defendants subsequently filed a Response in Opposition to Plaintiffs' Alternative Motion to Amend their Second Amended Complaint on March 17, 2021. (ECF No. 40.) For the following reasons, JCI Defendants' Motion to Dismiss the Second Amended Complaint is **DENIED in part and GRANTED in part.** JCI Defendants' Motion to Dismiss the Second Amended Complaint is **GRANTED** as to Plaintiffs' Negligence Per Se Claims, as well as Plaintiffs who serve as business entities in Count 2 and Count 3 of the Negligent and Intentional Infliction of Emotional Distress claims. Furthermore, Plaintiffs' Alternative Motion to Amend their Complaint is **DENIED**.

## FACTUAL BACKGROUND

This case arises out of injuries allegedly sustained from JCI Defendants' past and continuing improper storage, discharge release, and inadequate remediation of toxic chemicals as

a result of chemical releases and related conduct at an industrial facility located in Lexington, Tennessee (the "Industrial Site"). (ECF No. 33.) Plaintiffs' Second Amended Complaint alleges the Manufacturers Industrial Group LLC[1] (the "MIG") owned or operated the Industrial Site between December 2006 and October 2013. Defendants allegedly used and buried toxic chemicals on the Industrial Site while manufacturing auto-parts. (*Id.*) The toxic chemicals include (1) trichloroethylene ("TCE"); (2) tetrachloroethylene ("PCE"); cis-1,2-dichloroethylene, trans-1,2-dichloroethylene, and 1,1-dichloroethylene. (*Id.*) The alleged contamination resulted in a toxic plume in the groundwater under the surrounding neighborhood that grew from 0.26 miles in 2009 to 0.44 miles in 2012. (*Id.*) Plaintiffs consist of over 400 individuals and several entities who own property or live near the Industrial Site and allegedly have been negatively affected by the contamination. (*Id.*) JCI Defendants aver that Plaintiffs admit they cannot prove physical injury from the contamination and have not identified any physical injury in required disclosures. (ECF No. 6-3, 5.) However, Plaintiffs indicate that damages for mental anguish and anxiety are continuing and cannot be quantified at this time. (*Id.*)

Essentially, Plaintiffs allege in the Second Amended Complaint that their water is unfit for drinking and that chemicals are vaporizing and entering the airspace where they may be inhaled. (ECF No. 6-2, ¶¶ 44-46.) The Second Amended Complaint acknowledges that Adient voluntarily reported the released solvents to the Tennessee Department of Environment and Conservation ("TDEC") in 2007, shortly after they were discovered at the end of 2006, and promptly retained Weston Solutions, Inc. ("Weston") to investigate the matter and remediate. (*Id.*; ¶¶ 25-32.) Adient voluntarily entered the Industrial Site into the State voluntary cleanup program in 2007 once the contamination was discovered. (ECF No. 6-4, Exhibit C.) The Second Amended Complaint further

---

[1] Manufacturers Industrial Group LLC was a Tennessee Liability Company that dissolved in August 2016.

alleges that Weston's investigation through 2012 found that the groundwater was contaminated with TCE, PCE, and TCE degradation products. (ECF No. 6-2, ¶ 33; *See* Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant (July 2014)).

The remediation conducted on behalf of Adient was approved by TDEC and the Site remains under TDEC oversight.[2]  (ECF No. 6-1, 11; ECF No. 6-2, ¶¶ 26-28, 43.)  On August 26, 2018, TDEC concluded that the "groundwater plume, along with all pathways of concern (surface soil, surface water, sediments, and vapor intrusion) has been fully evaluated and that based on current data, none of these pathways pose an unacceptable risk to any known receptors."  (ECF No. 6-5, Exhibit D.)  Moreover, at TDEC's request, the Tennessee Department of Health ("TDH") conducted a Health Consultation ("TDH Report") on May 2, 2011, concluding that the chemicals "PCE and TCE in addition to TCE's breakdown will not harm the health of residents in homes downgradient from the MIG facility or the plant employees."[3]  (*Id.*)  In addition, TDEC approved an approach that provides for the continued reduction of the remaining contamination through natural processes. (*Id.*)  TDEC indicated that continued periodic monitoring and well sampling is a crucial part of any monitored natural attenuation remedy.  (*Id.*)  TDEC stated that "when site related contaminants have been detected in residential indoor air, the same contaminants were not detected in co-located sub slab or ambient air samples, indicating that a non-site related source likely contributed to the indoor air sample detections."  (*Id.*)

---

[2] In February 2007, JCI informed the TDEC that inadvertent discharges from the industrial facility likely resulted in chlorinated compounds' presence. (ECF No. 52, 3.) Subsequently, JCI hired Weston to investigate possible contamination in the area surrounding the facility.  As part of its investigation, Weston installed monitoring wells in the surrounding area.  (*Id.*)  Eventually, a groundwater plume was discovered at the facility and its vicinity, which expanded into neighborhoods and an aquifer.  (*Id.*)  Allegedly, Weston has engaged in remediation efforts to address the plume, but these efforts have been ineffective.  (*Id.* at 4.)

[3] *See* TDH Health Consultation Report, May 2, 2011. Evaluation for the Vapor Intrusion Investigation for the Johnson Controls Facility, Lexington, Henderson County, Tennessee (tn.gov) (last visited on March 17, 2022.)

Plaintiffs' claims in the Second Amended Complaint are: Count 1—negligence, gross negligence, and negligence *per se*; Count 2—intentional infliction of emotional distress; Count 3—negligent infliction of emotional distress; Count 4—trespass; Count 5—public nuisance; Count 6—private nuisance; Count 7—breach of duty to warn; Count 8—battery; Count 9—assault; Count 10—common law strict liability; Count 11—punitive damages; Count 12—injunctive relief and Count 13—successor liability and miscellaneous claims.  (ECF No. 33.)

## PROCEDURAL BACKGROUND

On August 2, 2018, Plaintiffs filed their initial Complaint in the Circuit Court of Henderson County, Tennessee.  (ECF No. 1-1, 2.)  On September 14, 2018, Adient and JCI removed this case to the United States District Court for the Western District of Tennessee.  (*Id.* at 60.)  On April 11, 2019, the district court entered an Order Granting Plaintiffs' Motion to Remand, finding diversity and federal question jurisdiction lacking.  *See Adams v. Adient US, LLC*, No. 1:18-cv-01179-JDB-egb, 2019 U.S. Dist. LEXIS 62277 (W.D. Tenn. Apr. 11, 2019).  Following remand, on January 2, 2020, the Circuit Court granted summary judgment in favor of the MIG Defendants,  thereby dismissing the claims against them.[4]  (ECF No. 1-4, 110.)

Following a grant of leave to file, Plaintiffs filed their Second Amended Complaint in the Circuit Court on August 24, 2020, against Adient, JCI, Hoover, the MIG Defendants, and Fictitious Defendants A through Z.  (ECF No. 1-12, 60–62, 75, 82.)  Therein, Plaintiffs assert 13 claims and seek $500 million in compensatory damages.  (ECF Nos. 1-12, 101–04 & 1-13, 1–10.)  On

---

[4] The Court notes "MIG Defendants" when defined collectively refers to the Dissolved MIG, the Active MIG, John Zardis and Andre Gist as Tennessee residents and former officers and members of the Dissolved MIG, MIG Steel Fabrication, LLC f/k/a MIG Construction Services, LLC, and MIG Enterprises, LLC. The Court does not agree that these parties—dismissed by the state court—are properly regarded as current Defendants in this action. The summary judgment motion stated that the MIG Defendants "move for summary judgment on all of plaintiffs' claims against them." (ECF No. 1-3, 94.)  Thus, this Court disagrees with Plaintiffs' position that the grant of summary judgment was partial.  (*See* ECF No. 20-1, 5.)

September 1, 2020, Hoover filed a Notice of Removal, to which the remaining Defendants consented. (ECF Nos. 1, 6 & 1-15.) The Notice asserts that this Court has traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332 and jurisdiction under the Class Action Fairness Act. (ECF No. 1, 6–7.) On September 30, 2021, the Court entered an Order denying Plaintiffs' Motion to Remand, because the Court has jurisdiction over this case pursuant to the Class Action Fairness Act which no exceptions thereto apply. (ECF No. 52.)

## **LEGAL STANDARD**

JCI Defendants seek to dismiss Plaintiffs' claims under 12(b)(6) of the Federal Rules of Civil Procedure. A complaint may be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything is alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cnty., Tenn.*, 814 F.2d 277, 279 (6th Cir. 1987)).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To put it plainly, although the complaint need not contain detailed facts, its "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555.) Determining whether a complaint states

a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense.[5] *Iqbal*, 556 U.S. at 129.

"A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004)).  In evaluating a motion to dismiss, the complaint is reviewed in the light most favorable to the plaintiff drawing all reasonable inferences in favor of the plaintiff. *Id.* The burden lies upon the defendant seeking dismissal. *Mediacom Southeast LLC v. Bellsouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012).

Plaintiffs' Alternative Motion to Amend Complaint is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which permits a party to amend its pleading if the opposing party provides written consent or the court grants leave to amend. Rule 15(a)(2) instructs district courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, denial may be appropriate where there is "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). These are factors courts may weigh when deciding whether to grant leave to amend. *Knight Capital Partners Corp. v. Henkel AG & Co, KGaA*, 930 F.3d 775, 786 (6th Cir. 2019). A proposed amendment is considered futile if it could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018).

---

[5] The Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint," however, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (alterations in original) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## ANALYSIS

### I.    Motion to Dismiss

Count 1:  Negligence and Negligence *per se* claims

    *a.  Negligence*

JCI Defendants argue there is no legal duty to Plaintiffs as a matter of law because Plaintiffs' allegations are premised on impacts to groundwater, surface water, and aquifer contamination, which are State sovereign resources reserved for TDEC.[6] (ECF No. 6-1, 15-16.) Defendants assert that any duty regarding alleged damage to Plaintiffs use of water can only be owed to the State, not to Plaintiffs.  *See* Tenn. Code Ann. § 68-221-702 ("[r]ecognizing that the waters of the state are the property of the state"). According to JCI Defendants, the Second Amended Complaint makes no allegation regarding any private drinking water wells, nor does it allege any Plaintiff was exposed to harm by drinking contaminated groundwater. (ECF No. 6-1, 16.) JCI Defendants argue that these omissions are fatal because Plaintiffs' allegations stem from underground contamination of State-owned groundwater, and Plaintiffs who do not use the groundwater have no property rights in it nor a claim for damages or any duty owed by Adient.[7] (*Id.*)

Plaintiffs argue that relevant case law and statues support their right to bring a negligence claim against JCI Defendants. (ECF No. 33, 9.)  Plaintiffs indicate that their claims are not based on negligence relating to the groundwater alone because JCI Defendants have also contaminated

---

[6] *See* Second Amended Compl. (ECF No. 6-2, ¶1) (alleging aquifer contamination and that the groundwater is "undrinkable"); ¶¶32– 33, 41–42 (alleging contaminated groundwater plume); ¶¶45, 49, 51 (alleging contaminated aquifer); ¶120 (alleging the chemicals accumulated in the "surface water and/or groundwater").

[7] JCI Defendants indicate that "although not alleged in the Complaint, diligent public record searches by Weston and documented in the Remedial Action Plan revealed only six plaintiffs' properties had wells. In discovery, only two of the 350 responding plaintiffs stated they used well water.  All negligence claims by all other plaintiffs, to the extent they are premised on groundwater damages, should be dismissed as a matter of law." (ECF No. 6-1, 17.)

the soil and the air.  (*Id.* & ECF No. 6-2, ¶¶ 1, 29, 46, 47, 91, 93, 103, 107, 120, 121, 125, 126, and 130.)  Ultimately, Plaintiffs emphasize that JCI Defendants' arguments do not address the claims presented in the Second Amended Complaint. (*Id.*)

> The Tennessee Water Quality Control Act ("TWQCA")[8] states:
>
> The penalties, damages, and injunctions provided for in §§ 69-3-115 – 69-3-119 are intended to provide additional and cumulative remedies to prevent, abate, and control the pollution of the waters of the state. Nothing contained in this section shall be construed to abridge or alter rights of action or remedies in equity or under common law or statutory law, criminal or civil, nor shall any provision of §§ 69-3-115 – 69-3-117 or this section, or any act done by virtue thereof, be construed as estopping the state or any municipality *or person*, as riparian owners or otherwise, *in the exercise of their rights in equity or under the common law or statutory law to suppress nuisances, to abate pollution, or to recover damages resulting from such pollution.*

Tenn. Code Ann. § 69-3-118(b) (emphasis added). "A landowner has a property right in groundwater only to the extent he actually uses that water; he has no property interest in that water simply because it resides beneath his land." *Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 521 (6th Cir. 2013). However, in *Sterling v. Velsicol Chemical Corp.,* this Court found "a duty, a standard of conduct, imposed by law on the defendant to protect others from unreasonable harm arising from the dumping of the chemicals." *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 848 (W.D. Tenn. 2006) (citing *Sterling v. Velsicol Chem. Corp.,* 647 F. Supp. 303, 316 (W.D. Tenn. 1986), *rev'd in part on other grounds*, 855 F.2d 1188 (6th Cir. 1988))). Tennessee citizens, as beneficiaries of a public trust regarding use of water within the State, "have a right to an adequate quantity and quality of water as well as a right to unpolluted waters." Tenn. Code Ann. § 68-221-702 & Tenn. Code Ann. § 69-3-102.

---

[8] Tenn. Code Ann. § 69-3-101 *et seq.* (1971).

It is clear that the TWQCA, when viewed in totality, allows for a person to enforce their rights under statutory law, to suppress nuisances to abate pollution, or to recover damages from pollution.  The Court notes that in *In re Tennessee Valley Auth. Ash Spill Litig.*, the Tennessee Valley Authority ("TVA") was held accountable for its negligence in failing to implement a design,  and that once the agency decided to locate, design, and construct a wet coal ash facility at all, they were liable for doing so negligently. *In re Tennessee Valley Auth. Ash Spill Litig.*, No. 3:09-CV-009, 2012 WL 3647704, at *52 (E.D. Tenn. Aug. 23, 2012); *see also Mays v. Tennessee Valley Auth.*, 699 F. Supp. 2d 991, 1020 (E.D. Tenn. 2010) (stating that "once TVA exercised its discretion to construct, use, and keep in operation the Swan Pond facilities, it was obligated to operate the facilities in a non-negligent manner").  Thus, Plaintiffs are entitled to proceed with their negligence claims against JCI Defendants.  Plaintiffs have sufficiently plead the existence of a duty by JCI Defendants, and the Second Amended Complaint contains sufficient factual matter regarding contamination of air and soil−not just groundwater contamination. Moreover, Plaintiffs have sufficiently plead a true injury when the Second Amended Complaint is viewed in the light most favorable to them.

The Court recognizes that the TDH Report concluded that the chemicals PCE, TCE, and TCE breakdown and will not harm the health of residents in homes downgradient from the MIG facility or the plant employees.  However,  the Court also notes that TDH Report was conducted over ten years ago and that further pollution or negative effects may have occurred in the interim.  Thus, the Court has no reason to not accept Plaintiffs' allegations as true at this stage of the litigation. There are factual allegations under which relief could be granted, given the number of Plaintiffs who use the soil for planting and gardening, who are in close proximity with respect to airspace, and who use well water.  Plaintiffs has sufficiently stated a claim for negligence.

Accordingly, JCI Defendants' Motion to Dismiss the Second Amended Complaint with respect to Plaintiffs' negligence claim is **DENIED**.

b.  *Negligence Per Se*

JCI Defendants argue that Plaintiffs do not state a negligence *per se* claim as a matter of law because Plaintiffs rely on the TWQCA, the Tennessee Air Quality Act ("TAQA")[9], and the Tennessee Solid Waste Disposal Act ("TSWDA").[10] They argue that none of these acts provide a private right of action and contain no statutory standard of care. (ECF No. 6-1, 13.) Additionally, JCI Defendants argue that Plaintiffs do not allege they belong to a statutorily protected class. (*Id.*) Plaintiffs respond that the TWQCA, TAQA, and TSWDA were enacted to protect the public and the environment. (ECF No. 33, 6.) Thus, Plaintiffs assert that their claims fall within the intended protected class of the TWQCA, TAQA, and TSWDA. (*Id.*)

"In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that the injured person was within the class of persons that the statute was meant to protect." *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 253 (6th Cir. 2005) (citing *Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 937 (Tenn. 1994) (internal citations and quotations omitted))). Under Tennessee law, only statutes that establish a standard of care may support a claim of negligence per se. *Id.* (citing *Rains v. Bend of the River,* 124 S.W.3d

---

[9] Tenn. Code Ann. § 68-201-103 *et seq*. (The intent and purpose of the TAQA "is to maintain purity of the air resources of the state consistent with the protection of normal health, general welfare and physical property of the people, maximum employment and the full industrial development of the state. The board and department shall seek the accomplishment of these objectives through the prevention, abatement and control of air pollution by all practical and economically feasible methods.")

[10] Tenn. Code Ann. § 68-211-102 *et seq*. (The intent and purpose of the TSWDA is "to protect the public health, safety and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, enhance the beauty and quality of our environment and provide a coordinated statewide solid waste disposal program.")

580, 590 (Tenn. Ct. App. 2003); *Thomas & Associates, Inc. v. Metropolitan Government of Nashville,* No. M2001-00757-COA-R3-CV, 2003 WL 21302974 (Tenn. Ct. App. 2003) (citing *King v. Danek Med. Inc.,* 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000))). Legal duties may arise in two ways under Tennessee law. *Rains*, 124 S.W.3d at 589. First, the General Assembly may create a legal duty and then provide a civil cause of action for its breach. *Id.* Second, the General Assembly may enact a penal statute that does not explicitly provide a civil remedy, and the courts may then derive a civil legal duty from the penal statute. *Id.* Even if these prerequisites are met, "other factors apply including, but not limited to, (1) the nature of the legislative provision; (2) the adequacy of existing remedies; (3) the extent to which recognizing a cause of action in negligence per se would aid, supplement, or interfere with existing remedies; (4) the significance of the purpose that the legislative body was seeking to effectuate in the statute, regulation, or ordinance; (5) the extent of the change in tort law that would result from recognizing the action; and (6) the burden that the new cause of action would place on the judiciary." *Estate of French v. Stratford House*, 333 S.W.3d 546, 562 (Tenn. 2011) (citing Restatement (Second) of Torts § 874A, cmt. h (1979)). Here, the Court finds that the TWQCA, TAQA, and TSWDA cannot support a claim of negligence *per se*. Several considerations support this finding.

First, "the determination of whether negligence per se claims [are] actionable under a certain statute has been found to be 'analytically related' to whether an implied private of action exists under a legislative enactment." *In re Tennessee Valley Authority*, 2021 WL 367704, at *60 (citing *Rains*, 124 S.W.3d at 588-89 n.5; *Thomas & Assocs., Inc.*, 2003 WL 21302974, at *10.) The Tennessee Supreme Court has previously held that the TSWDA does not provide a private cause of action as it is designed to empower government enforcement. *Goff v. Elmo Greer & Sons Const. Co.*, 297 S.W.3d 175, 186 (Tenn. 2009) (citing *Wayne Cnty. v. Tenn. Solid Waste Disposal*

*Control Bd.*, 756 S.W.2d 274, 282 (Tenn. Ct. App. 1988)). The TSWDA, TAQA, and TWQCA all feature extremely similar phrasing, relate primarily to government enforcement of environmental regulations, and do not explicitly empower any private enforcement. While this does not mean these Acts "cannot form the basis of negligence *per se*" as a matter of law as the defendants argue, it is certainly persuasive authority that private enforcement of these acts through negligence *per se* was not intended.

Second, it appears that the TWQCA, TAQA, and TSWDA do not meet a fundamental requirement of negligence *per se*, which is to establish a class of persons that the statute is meant to protect that is more specific than merely *every* person. Restatement (Second) of Torts § 288(b) ("The Court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public"); *see Rains*, 124 S.W.3d at 591 n.10 (citing this section affirmatively).

Third, a negligence *per se* action under the TWQCA, TAQA, and TSWDA would not fit well within the factors the Tennessee Supreme Court has previously cited when determining whether to allow a negligence *per se* claim to proceed. *See Estate of French*, 333 S.W.3d at 562. The nature of these broad environmental statutes is to allow for government enforcement of a complex regulatory scheme. If any violation of these statutes could lead to a negligence *per se* theory by a private party, the burden on the judiciary would be massive and could potentially interfere with government enforcement, which may involve negotiation or other remedial measures.  Plaintiffs' citation to the entirety of these statutes in their Complaint as the basis for their negligence *per se* claim only exacerbates this problem: allowing private enforcement through actions for damages under the majority of the Tennessee environmental code seems outside of

what the legislature intended.[11] Setting standards of care in the negligence *per se* context involves defining "the standard of conduct of reasonable persons in specific circumstances" and is a decision that ultimately rests with the Court. *Rains*, 124 S.W.3d at 590-91 (citing *Burns v. Frontier II Props. Ltd. P'ship*, 106 S.W.3d 1, 3 (Mo. Ct. App. 2003)). The broadness of Plaintiffs' theory would mean accepting bright line standards of care for a whole host of acts, many unknown, that may impact regulated environmental factors. The Court declines to do so.

The JCI Defendants' Motion to Dismiss the Second Amended Complaint with respect to the Plaintiffs' negligence *per se* claim is **GRANTED**.

<u>Counts 2 and 3</u>:  <u>Negligent and Intentional Infliction of Emotional Distress</u>

JCI Defendants assert the Second Amended Complaint only alleges that Plaintiffs have sustained "mental anguish or emotional suffering." (ECF No. 6-1, 17; *See* ECF No. 6-2, ¶¶ 60, 82, and 89.)  According to the JCI Defendants, these statements do not satisfy the "serious mental injury" element required to sufficiently raise claims for negligent and intentional infliction of emotional distress.  They further argue the Plaintiffs include business entities in their cause of action for negligent and intentional infliction of emotional distress, which cannot suffer emotional distress.[12] Plaintiffs respond that the Second Amended Complaint contains factual allegations of Plaintiffs suffering significant emotional distress, which is much more than hurt feelings, trivial upsets or temporary discomforts.  (ECF No. 33, 10-11.)

In Tennessee, the following nonexclusive list of factors should be considered in determining whether a Plaintiff has sufficiently alleged "severe mental injury" so as to support his

---

[11] While Plaintiffs provide examples in their brief of specific regulations they believe establish different standards of care, it is clear these are meant as examples, rather than a narrowing of the argument.

[12] JCI Defendants indicate that out of the 450 Plaintiffs, four are business entities. (Royal Properties Inc., Mt. Calvary Baptist Church, Lexington Properties, Ltd., and Renfroe Rental Properties are classified as Plaintiffs.) (ECF No. 6-2, ¶ 7.)

or her claim for negligent or intentional infliction of emotional distress: (1) evidence of physiological manifestations of emotional distress; (2) evidence of psychological manifestations of emotional distress; (3) evidence that plaintiff sought medical treatment; (4) evidence of duration and intensity of the claimant's physiological and psychological systems; (5) evidence that defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and (6) defendant's extreme and outrageous conduct. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 209–10 (Tenn. 2012).  Moreover, a "serious or severe" emotional injury is one that occurs "'where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.'" *Id.* (quoting *Rodrigues v. State*, 472 P.2d 509, 520 (Haw. 1970)). However, "a corporation [] may not recover damages for emotional distress." *Action Security Services, Inc. v. John Willis Webb, Individually, Multiple Management, and Security Wise, Inc.*, No. 02C144, 2004 WL 5138696, at *1 (Tenn. Cir. Ct. Jul. 27, 2004).

In the case at hand, Plaintiffs allege that JCI Defendants' conduct caused them to suffer significant impairment such as mental anguish, emotional distress, physical harm, and the threat of physical harm in their daily functioning. Under these circumstances alleged, and when considering the nonexclusive factors, the Court concludes that a reasonable person would be unable to adequately cope with the mental stress, which constitutes a serious or severe emotional injury.  It appears that Plaintiffs negligent and intentional infliction of emotional distress claims contain sufficient factual content to rise above a speculative level. Thus, the Court finds that Plaintiffs have adequately alleged negligent and intentional infliction of emotional distress, and JCI Defendants' Motion to Dismiss with respect to Plaintiffs' claim is **DENIED**.  However, since corporations may not recover for emotional distress, JCI Defendants' Motion to Dismiss the

Second Amended Complaint with respect to Plaintiffs who serve as business entities is **GRANTED**.

Count 4:  Trespass claims

JCI Defendants allege the Second Amended Complaint fails to state that any Plaintiffs either owned, occupied or had actual possession of property at the time of the trespass, thus warranting dismissal. (ECF No. 6-1, 18-19.)  They also argue that any property owners who leased their property to another at the time of the alleged trespass are not occupants who could bring a trespass claim. (*Id.*) To put it another way, JCI Defendants allege that Plaintiffs, as owners, must be in possession as actual occupants of the property to assert a claim for trespass.

Plaintiffs argue they are entitled to bring a trespass claim as "current and past owners and/or occupiers of properties in Lexington, Tennessee near the Industrial Site." (ECF No. 6-2, ¶ 56.) Plaintiffs assert that JCI Defendants have "(1) engaged in the release and spread of toxic and harmful chemicals onto the Industrial Site and other properties in the Lexington, Tennessee area; (2) contaminated the air, soil, surface water, and ground water in, on and/or near the Plaintiffs' properties; and/or (3) caused injury and damage to Plaintiffs' bodies."  (*Id.*, ¶ 91.)

In Tennessee, "every entry upon the soil of another, in the absence of lawful authority, without the owner's license is a trespass." *Norvell v. Gray's Lessee*, 31 Tenn. 96, 103 (1851); *See State v. Christenson*, 517 S.W. 3d 60, 76 (Tenn. 2017); *State v. Lyons*, 802 S.W. 2d 590, 594 (Tenn. 1990). Furthermore, a trespass may result from indirect force. *Twenty Holdings, LLC v. Land S. TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 WL 4200970, at *7 (Tenn. Ct. App. Sept. 5, 2019). One who sets in motion a force that, in the usual course of events, will damage another's property is liable for trespass.  (*Id.*)

Here, Plaintiffs, as current and past owners of property surrounding the Industrial Site, allege facts in the Second Amended Complaint that are sufficient to support their claim for trespass against the JCI Defendants. As noted, the ten year old TDH Report that was provided by JCI Defendants concluded that chemicals PCE and TCE in addition to TCE's breakdown will not harm residents in homes downgradient from the MIG facility or plant employees. It appears that factual disputes are evident even at this early stage of the litigation.  At this point, the Court finds that Plaintiffs have sufficiently plead a claim for trespass. Thus, JCI Defendants' Motion to Dismiss the Second Complaint as to Plaintiffs' trespass claim is **DENIED**.

<u>Count 5</u>: <u>Public Nuisance</u>

JCI Defendants argue that Plaintiffs allege no special injury with their public nuisance claim as a matter of law.  (ECF No. 6-1, 21.)  JCI Defendants further assert that "on the face of Plaintiffs' Second Amended Complaint, no Plaintiff stands in any different position from the general public that also lives near the Site." (*Id.*)  In response, Plaintiffs allege that JCI Defendants polluted and contaminated the groundwaters beneath their community with highly toxic chemicals, including TCE, which amounts to a public nuisance.[13]  As a direct result, Plaintiffs homes have been damaged by JCI Defendants' pollution of the property they own, causing the value of their land to diminish.  (ECF No. 6-2, ¶ ¶ 1, 29, 46, 47, 91, 93, 102-09, 120, 121, 125, 126, and 130). Plaintiffs say that these allegations are specifically recognized as the type of special injury sufficient to support their public nuisance action.  (ECF No. 33, 15.)

---

[13] The Court notes Plaintiffs reference to one of the products of TCE is Vinyl Chloride, "a significantly more dangerous and hazardous carcinogen." (ECF No. 33, 14.)  The Court also notes the May 2, 2011 TDH Report  stated that the Tennessee Department of Health's Environmental Epidemiology Program concluded the chemicals PCE and TCE and TCE's breakdown chemicals will not harm the health of residents in homes downgradient from the MIG facility. (*See*, *supra* note 3.; TDH Health Consultation Report.)

In Tennessee, liability for a public nuisance is based on interference with the public's use and enjoyment of a public place or with other rights common to the public. *Metro. Gov't of Nashville & Davidson Cnty. v. Counts*, 541 S.W.2d 133, 138 (Tenn. 1976). However, "[n]o private citizen can bring a bill to restrain a public nuisance, unless the complainant can show some injury of a serious nature to himself, different and apart from the general injury to the public." *Weakley v. Page*, 102 Tenn. 178, 53 S.W. 551, 554 (1899); *see also Wayne Cnty v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W. 2d 274, 283 (Tenn. Ct. App. 1988). Moreover, a public nuisance is a "condition of things which is prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large, resulting either from an act not warranted by law or neglect of a duty imposed by law." *State ex rel. Swann v. Pack*, 527 S.W.2d 99, 113 (Tenn. 1975). "A public nuisance may be abated on a bill in equity, brought by a private party, who has suffered special damage." *Mississippi & M.R. Co. v. Ward*, 67 U.S. 485, 491, 17 L. Ed. 311 (1862).

Here, the Second Amended Complaint alleges that the JCI Defendants interfered with their groundwater by causing pollution beneath their community, resulting in property damage of their homes. It appears to the Court that Plaintiffs have sufficiently plead specific injuries of a serious nature, different and apart from the general injury to the public. Each Plaintiff experienced unique and distinct property damage to their homes and the value of their land has declined as a result. It is plausible that Plaintiffs incurred property damage that caused a reduction in property value because of a public nuisance. Therefore, the Court finds that Plaintiffs have sufficiently stated a public nuisance claim. Accordingly, JCI Defendants' Motion to Dismiss as to Plaintiffs' public nuisance is **DENIED**.

Count 6:   Private Nuisance

JCI Defendants argue that 452 plaintiffs are considered "the public." Thus, the private nuisance alleged is interference with public rights—not private rights. (ECF No. 6-1, 21.)  They further argue that allowing this number of plaintiffs to collectively assert a private nuisance claim effectively nullifies the public nuisance doctrine as it is applied in Tennessee.  (*Id.*)  Plaintiffs allege that toxic chemicals were released and spread through and near Plaintiffs' properties which contaminated the air, soil, surface water, and groundwater. (ECF No. 6-1, 21; ECF No. 6-2, 107-108.)  Thus, Plaintiffs argue the use and enjoyment of their land was negatively impacted.  (*Id.*)

In Tennessee, a private nuisance is defined as "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable and extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364 (Tenn. 2002) (quoting *Pate v. City of Martin,* 614 S.W.2d 46, 47 (Tenn. 1981)).  So "long as the interference is substantial and unreasonable, such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance." *Id.* at 365 (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* 619–20 (5th ed.1984)).  Thus, a nuisance does not describe a defendant's conduct, but a type of harm suffered by the plaintiff. *Id.*; *see also Zollinger v. Carter,* 837 S.W.2d 613, 615 (Tenn. Ct. App. 1992).

In the case at hand, Plaintiffs allege that JCI Defendants committed a private nuisance because of toxic chemicals that were released and spread amongst Plaintiffs' properties. Upon review of the Second Amended Complaint, there are facts alleging a substantial and unreasonable invasion of Plaintiffs' property that caused the contamination of air, soil, surface water, and

groundwater. Such contamination would not only be offensive and inconvenient to a normal person, but also would significantly diminish the enjoyment and value of Plaintiffs' property.

There are many examples of what constitutes a private nuisance in Tennessee law. For example, In *Signal Mountain Portland Cement Co. v. Brown,* the Sixth Circuit held that a private nuisance existed "where smoke and noxious gases from smelting works injured the property and endangered the health of adjoining landowners an action for damages would lie, even though the business of the defendant was conducted in a suitable locality with the most approved appliances and furnished employment, directly or indirectly, to nearly the whole community." *Signal Mountain Portland Cement Co. v. Brown*, 141 F.2d 471, 475 (6th Cir. 1944). Also, in *Wayne Cty. v. Solid Waste Dis. Cont. Bd.*, two landowners sued a county after their wells were contaminated by a county-owned landfill. The state's solid waste disposal control board found for the landowners and ordered the county to supply the landowners with uncontaminated water. 756 S.W.2d 274, 284 (Tenn. Ct. App. 1988) (Holding that there was sufficient evidence to support the finding that the landfill had caused the contamination of the wells, but that the board did not have the statutory authority to fashion remedies and that "the plaintiffs' assertions would support a claim for damages under a private, as opposed to a public, nuisance theory, if the assertions were made in a court of competent jurisdiction.") In light of these precedents, and when reviewing the Second Amended Complaint in the light most favorable to Plaintiffs, coupled with making reasonable inferences in their favor, the Court finds there are sufficient factual allegations to support Plaintiffs' private nuisance claim. Thus, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' private nuisance claim is **DENIED.**

Count 7:   Breach of Duty to Warn

JCI Defendants argue that Plaintiffs' claim for breach of duty to warn is not recognized as a cause of action under Tennessee Law. (ECF No. 6-1, 22.)  Plaintiffs respond that a negligence claim has been adequately alleged and can be raised because JCI Defendants breached their duty owed to Plaintiffs by failing to adequately warn of the chemical contamination or dangers related to the resulting toxic plume. (ECF No. 6-2, ¶ 112.)

In Tennessee, "breach of a duty to warn is not a free-standing claim, but rather an element that may apply to a number of different types of claims, including simple negligence and various product liability claims." *Bissinger v. New Country Buffet*, No. M2011-02183-COA-R9CV, 2014 WL 2568413, at *19 (Tenn. Ct. App. Jun. 6, 2014); *Flax v. DaimlerChrysler Corp.,* 272 S.W.3d 521, 542 (Tenn. 2008).  However, the law does not impose a duty to warn of risks that are widely known. *Bissinger*; 2014 WL 2568413, at *19; *see also Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 692 (Tenn. 1984).  In this regard, a "failure to warn of a dangerous condition that one did not create and could not have anticipated does not constitute a breach of the duty of care*." Miles v. Kohli & Kaliher Assocs., Ltd.*, 917 F.2d 235, 244 (6th Cir. 1990).

In the case at hand, the Second Amended Complaint contain factual allegations that suggest JCI Defendants breached their duty to Plaintiffs for failure to warn of the presence of toxic chemicals that contaminated the air, soil, surface water, and groundwater.  The allegations of harm asserted in the Second Amended Complaint are the type of harm that JCI Defendants could have created and anticipated given their line of business. The risks associated with toxic chemicals are widely known, which may plausibly impose a duty to warn. The Court notes TDEC acknowledged the contamination and affirmed that continued periodic monitoring and well sampling are effective attenuation remedies. Consequently, TDEC identified some level of contamination and the need for remediation. Given JCI Defendants failure to warn as alleged by Plaintiffs, the Court makes a

reasonable inference that JCI Defendants breached their duty to warn under a negligence theory. Accordingly, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' breach of duty to warn claim is **DENIED**, <u>in so far as the claim merely states one of the Plaintiffs' theories of simple negligence as alleged in Count 1.</u>

<u>Count 8</u>:    <u>Battery</u>

JCI Defendants argue the Second Amended Complaint fails to allege intent, an essential element of battery. (ECF No. 6-1, 22.) More specifically, they argue that Plaintiffs failed to state that Adient acted with the intent to cause a harmful or offensive contact with Plaintiffs' bodies as required to allege battery. (*Id.*) JCI Defendants make the point that intent to dispose of chemicals is not the same as disposing of chemicals with intent to cause offensive contact with Plaintiffs' bodies. Because that element is lacking, Count 8 of the Second Amended Complaint should be dismissed. (*Id.*)

Plaintiffs argue that JCI Defendants have intentionally and continuously committed battery to Plaintiffs' persons by releasing, dispersing, and failing to contain and remediate hazardous chemicals and pollutants. (ECF 6-2, ¶ 118.) Plaintiffs also assert that JCI Defendants have willfully, intentionally, or purposefully disposed of toxic chemicals in a manner JCI Defendants knew to be unsafe, illegal, and dangerous to nearby properties, owners, and residents. (*Id.*; ¶ 65.) As a result, JCI Defendants should be held liable because they "knew or should have known that toxic chemicals would be ingested by Plaintiffs when they breathed the air, worked in their yards, gardened, and/or ate food from the gardens or fish caught in the nearby rivers and their tributaries." (*Id.*; ¶ 121.) Plaintiffs conclude that Defendants' intentional actions have caused unpermitted, harmful, or offensive bodily contact with Plaintiffs. (*Id.*; ¶ 119.)

In Tennessee, a civil cause of action for battery is "any intentional, unlawful and harmful or offensive contact by one person with the person of another." *Thompson v. Williamson Cnty., Tenn.*, 965 F. Supp. 1026, 1038 (M.D. Tenn. 1997), *aff'd Thompson v. Williamson Cnty., Tennessee*, 219 F.3d 555 (6th Cir. 2000). However, "not every physical contact that is unconsented to is so offensive that it amounts to a battery." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 855 (E.D. Tenn. 2011). Rather, "offensive contact" is "contact that infringes on a reasonable sense of personal dignity ordinarily respected in a civil society." *Reagan v. City of Knoxville*, 692 F. Supp. 2d 891, 904 (E.D. Tenn. 2010) (citing *Doe v. Mama Taori's Premium Pizza,* No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *4 (Tenn. Ct. App. 2001)). Also, the intent required for a battery is not an intent to cause harm. Rather, it is an intent to do the act that causes the harm. *See* T.P.I. - Civil § 8.02 (2021 ed.).

The JCI Defendants argue that Plaintiffs failed to allege intent which is an essential element of battery. The Court disagrees. The Complaint alleges that JCI Defendants intentionally disposed of toxic waste in such a way that caused harm. It is only common sense that operating a business that produces toxic chemicals, if not properly contained, is bound to cause harm to a person through ingestion as the Plaintiffs allege. Therefore, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' battery claim is **DENIED**.

Count 9:   Assault

The JCI Defendants assert that Plaintiffs failed to allege two essential elements to state a civil claim for assault. They argue Plaintiffs' Second Amended Complaint fails to allege that Plaintiffs suffered fear of imminent harm and that Plaintiffs have not sufficiently plead that JCI Defendants acted with the requisite intent to cause Plaintiffs' fear of immediate peril. (ECF No. 6-1, 23-24.) Plaintiffs argue that because the JCI Defendants acted intentionally in disposing of

the toxic chemicals and failure to adequately remediate the risks, Plaintiffs had a "substantial apprehension of harm given their worry of ingesting chemicals." (*Id.*) Plaintiffs also contend that there are many factual allegations that need to be addressed before an assault claim can be ruled upon. (ECF No. 33, 27.)

Under Tennessee law, a civil action for assault cannot be sustained upon the basis of words alone; rather, there must be an overt act or some type of physical movement which would cause a plaintiff to believe there was imminent physical harm or danger.[14] *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 855 (E.D. Tenn. 2011). The tort of assault has two elements: "(1) An intentional attempt or the unmistakable appearance of an intentional attempt to do harm to, or to frighten, another person; and (2) The present ability or the unmistakable appearance of the present ability to do that harm or to cause that fright." *Doe v. Andrews*, 275 F. Supp. 3d 880, 887 (M.D. Tenn. 2017) (quoting T.P.I. Civil § 8.01); *see also Hughes*, 340 S.W.3d at 371 (holding intent to create apprehension of harm to the plaintiff is sufficient to support the tort of assault). Thus, assault requires a showing of a "present ability" to inflict physical harm that is "imminent" or about to happen, and that a defendant could actually cause, or unmistakably appear able to cause an assault.

On the face of the Second Amended Complaint, imminent physical harm is sufficiently plead. The Plaintiffs associated with this case have reasonably alleged fear or physical harm at different points of time, and the apparent ability of the JCI Defendants to cause that harm. Additionally, the intent requirement for the assault claim is satisfied because the Plaintiffs allege JCI Defendants acted with a substantial certainty that harm would result from their actions.

---

[14] Plaintiffs cites a law review article entitled "*The Environmental Fate of Toxic Waters, the Certainty of Harm, Toxic Torts, and Toxic Regulation*, 19 ENVTL. L. 321, 349 (1988)" to support their argument that a cause of action for assault raised later is permitted for the purposes of meeting the "imminent" requirement to satisfy an assault claim. The article states, "if someone acts knowing with a substantial certainty that harm will result, then the act constitutes battery. This holds true even if the harm occurs at a much later date, which is typical of toxic torts." (*Id.* at 349.)

Moreover, the alleged present ability of the Defendants to cause the physical harm or fear is uniquely captured by each Plaintiffs' perspective.  Thus, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' assault claim is **DENIED**.

Count 10:  Strict Liability

JCI Defendants argue that automobile parts manufacturing is not an abnormally dangerous activity for purposes of strict liability.[15] (ECF No. 6-1, 25.) Plaintiffs assert that JCI Defendants' manufacturing and releasing of toxic chemicals into the environment constitutes an abnormally dangerous activity. (ECF No. 6-2, ¶ 130.) Plaintiffs contend that pollution of the environment was accomplished when "JCI Defendants dumped and buried toxic chemicals at the Industrial Site which migrated to Plaintiffs' properties." (ECF No. 33, 21; ECF No. 6-2, ¶¶ 79-80.)

In Tennessee, "defendants engaged in ultrahazardous activities are held strictly liable for injuries caused to the person or property of another by defendant's participation in the activity." *Leatherwood v. Wadley*, 121 S.W.3d 682, 699 (Tenn. Ct.  App. 2003); *See England v. Burns Stone Co., Inc.,* 874 S.W.2d 32, 37 (Tenn. Ct.  App. 1993).  The care exercised by a defendant in carrying out said activity is irrelevant. *Leatherwood*, 121 S.W.3d at 700 (indicating storage of highly toxic chemicals is an ultrahazardous activity.); *see Miller v. Alman Constr. Co.,* 666 S.W.2d 466, 468 (Tenn. Ct.  App. 1983) (citations omitted); *see also Sterling v. Velsicol Chem. Corp.*, 647 F. Supp. 303, 311 (W.D. Tenn. 1986), *aff'd in part*, *rev'd in part*, 855 F.2d 1188 (6th Cir. 1988) (holding that a defendant was carrying on an abnormally dangerous activity when it created, implemented, operated and closed a chemical waste burial site in Hardeman County, Tennessee). The operation of an abnormally dangerous activity by a defendant makes that defendant strictly liable to the plaintiffs for all injuries caused thereby. *Id.*

---

[15] The Court notes that JCI Defendants provide case law regarding what constitutes abnormally dangerous activity from jurisdictions outside of the Sixth Circuit.

In this case, the Second Amended Complaint alleges that JCI Defendants stored and dumped large quantities of highly toxic chemical waste on the Industrial Site. The act of dumping huge quantities of highly toxic chemicals on the Industrial Site is factually sufficient to support a claim for strict liability. Therefore, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' strict liability claim is **DENIED.**

Count 11:  Punitive Damages

As far as a claim for punitive damages, JCI Defendants argue that "Plaintiffs' Second Amended Complaint shows that Adient reported the contamination to TDEC and undertook substantial investigative and remedial work under TDEC's oversight—even if Plaintiffs contended the work should have been done differently." (ECF No. 6-2, ¶¶ 26-29 & 43.)  They further assert that the "compounds originated from onsite manufacturing activities and inadvertent discharges from process areas and wastewater conveyances." (*Id.*; ¶ 27.)  JCI Defendants argue that punitive damages are not warranted in this case because they reported the contamination to TDEC and took steps to investigate and commence remedial work under TDEC's oversight.  Because of this, the JCI Defendants contend that Plaintiffs' allegations that Adient disposed of chemicals in an improper way fall short of showing the required intent to do harm or malice in order to award punitive damages. (ECF No. 6-1, 28.)

Plaintiffs argue that JCI Defendants intentionally and illegally dumped the hazardous chemicals in violation of environmental laws. (ECF No. 33, 22.) Plaintiffs further argue that any reference to "inadvertent discharge" was meant only to show JCI Defendants acknowledgement of causing the contamination. Thus, Plaintiffs aver that JCI Defendants willfully, intentionally, or purposefully disposed of toxic chemicals in a manner they knew to be unsafe, illegal, and dangerous to nearby properties, owners, and residents.  (ECF No. 6-2, ¶ 64.)

In Tennessee, a court may award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Punitive damages are available in cases involving "only the most egregious of wrongs." *N.H. ex rel. Hernandez v. Sequoyah Council, Inc.*, No. 2:11-CV-171, 2012 WL 2126863, at *2 (E.D. Tenn. Apr. 30, 2012). Where punitive damages are sought, the pleadings must properly disclose circumstances which justify an allowance of such damages. *Smith v. Tri-Cty. Elec. Membership Corp.*, 689 S.W.2d 181, 185 (Tenn. Ct. App. 1985).

Here, the Second Amended Complaint contains sufficient facts to support JCI Defendants' liability for punitive damages. Plaintiffs allege that JCI Defendants knew or should have known of the unsafe conditions and support a claim for punitive damages based on recklessness. Not having malice or an intent to do harm, as JCI Defendants suggest, does not negate JCI Defendants' admission to the discharge of the toxic chemicals. Thus, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' claim for punitive damages is **DENIED.**

Count 12:  Injunctive Relief

JCI Defendants argue that the broad remedial injunction Plaintiffs seek is precluded by the TWQCA and the TSWDA.  (ECF No. 39, 22.) JCI Defendants assert that "no injunction should be issued because the State ha[s] exclusive authority to enjoin pollution." (*Id.* at 21.) Therefore, JCI Defendants indicate the State has charged the TDEC, not tort plaintiffs or the courts, with determining and implementing appropriate environmental remedial measures.  (ECF No. 6-1, 28.) Plaintiffs assert that "TDEC does not have exclusive authority to enjoin or abate pollution of the waters of the State of Tennessee" and that a violation of the environmental laws enacted by the legislature is competent evidence to be considered in determining whether appropriate relief is to be afforded the aggrieved citizen.  (ECF No. 33, 23.)  Plaintiffs suggest that if the Court does not

intervene Plaintiffs will be irreparably injured due to continued mental anguish, emotional distress, physical harm, threat of physical harm and injury, as well as loss of value to their properties.  (ECF No. 6-2, ¶¶ 136-140.)

As stated previously, the TWQCA explicitly reserves the ability for "… a person to exercise their rights in equity or under the common law or statutory law to suppress nuisances, to abate pollution, or to recover damages resulting from pollution." *See infra* Count 1, Negligence claims.  Additionally, the TWQCA expressly states that "the people of Tennessee, as beneficiaries of the trust, have a right to unpolluted waters." (*Id.*) "The penalties, damages, and injunctions provided for in §§ 69-3-115 – 69-3-119 are intended to provide additional and cumulative remedies to prevent, abate, and control the pollution of the waters of the state." (*Id.*) Any citizen has the right to intervene on grounds that the penalties or remedies imposed by regulatory officials are inadequate or are based on erroneous findings of fact. *Goff v. Elmo Greer & Sons Const. Co.*, 297 S.W.3d 175, 185–86 (Tenn. 2009).

The TWQCA provides that plaintiffs are permitted to exercise their rights in equity, under common law, or through enforcing statutory law to abate the toxic chemicals that formed the pollution.  Thus, plaintiffs are authorized to recover damages from the pollution where the penalties or *remedies* imposed by regulatory officials are allegedly inadequate or based on erroneous findings of fact. After reviewing the Second Amended Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiffs have stated factual allegations to sufficiently support a claim for injunctive relief. (ECF No. 6-2, ¶¶ 135-140.)   Thus, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' claim for injunctive relief is **DENIED.**

Count 13:  Successor Liability

JCI Defendants argue that successor liability, corporate veil piercing, and indemnification involve an independent cause of action.  (ECF No. 6-1, 29.) JCI Defendants say that Plaintiffs' allegations are merely arguments that some JCI Defendants may be responsible for the liabilities of other JCI Defendants allegedly arising from the other twelve counts in the Plaintiffs' Second Amended Complaint.  (Id.) Therefore, JCI Defendants argue that Plaintiffs have not sufficiently stated a successor liability claim because it is not an independent claim, and all other claims should be dismissed. (ECF No. 33, 24; ECF No. 6-1, 29; ECF No. 39, 22.)

In support of Plaintiffs claim for successor liability, Plaintiffs allege in their Second Amended Complaint that "Defendants John Zardis and Andre Gist made distributions to themselves without properly dissolving or winding up the Dissolved MIG." (ECF No. 6-2, ¶ 143.) Plaintiffs state that John Zardis, Andre Gist, and the Manufacturers Industrial Group LLC ("Active MIG") have the exact same name as Dissolved MIG except that the Dissolved MIG ends in "L.L.C." whereas the Active MIG ends in "LLC." (Id. at 146.) The Dissolved MIG and the Active MIG have the same members. (Id. at 149.)  Plaintiffs claim that "the transfer of assets, including goodwill, from the Dissolved MIG to the Active MIG was not supported by sufficient consideration and was to defraud creditors and third-party claimants." and that "Johnson Controls, Inc. is responsible for any liabilities Adient US LLC or Hoover Universal, Inc. may incur given the transfer of assets to Adient US LLC or Hoover Universal, Inc. was intended to defraud creditors and third-party claimants from recovering any claims relating to or arising from Johnson Controls, Inc.'s illegal and wrongful activities within its division of auto parts manufacturing, including the illegal and wrongful dumping of toxic chemicals." (Id.; ¶¶ 151-52, 156.) Lastly, Plaintiffs allege that Defendant Johnson Controls is also responsible for any liabilities of its predecessor in interest,

Ferro Manufacturing, and its subsidiaries or affiliates based on successor liability because of the agreements with its subsidiaries or affiliates. (*Id.*; ¶ 159.)

The absence of common identity of ownership should not be conclusive against a finding of successor liability. *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 252 (6th Cir. 1994). Even where there is not a common identity of ownership, successor liability may attach where there is sufficient continuity of the enterprise between the two corporations. *Id*.  The following factors must be considered as guidelines in determining whether there is such continuity: (1) whether there is a continuation of the enterprise of the selling corporation, including a continuity of management, personnel, physical location, assets, and general business operations; (2) whether the selling corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) whether the purchasing corporation assumes those liabilities and obligations of the selling corporation ordinarily necessary for the uninterrupted continuation of the normal business operations of the seller. *Id.*

Here, Plaintiffs' underlying claims presented in their Second Amended Complaint contain sufficient factual matter that the Court has already accepted as true and plausible on its face. Plaintiffs adequately plead that the transfer of assets and liabilities, including goodwill, between the Active MIG and Dissolved MIG was not supported by adequate consideration, and that the Active MIG and Dissolved MIG defendants defrauded creditors and third-party claimants. Additionally, Plaintiffs allege that Johnson Controls, Inc. is responsible for any liabilities Adient US LLC or Hoover Universal, Inc. may incur because the transfer of assets was intended to defraud creditors and third-party claimants.  Plaintiffs allege that JCI Defendants engaged in this deception to prevent the recovery for any claims arising from Johnson Controls, Inc.'s allegedly illegal and wrongful dumping.

The ultimate question is whether there is sufficient continuity of the enterprise between the two corporations to implicate successor liability. The factual allegations concerning the Active MIG and Dissolved MIG having the same name and the same members demonstrates common identity of ownership sufficiently support a finding of successor liability.  Therefore, at the motion to dismiss stage, the Court finds that Plaintiffs have sufficiently plead a claim for successor liability. Accordingly, JCI Defendants' Motion to Dismiss the Second Amended Complaint as to Plaintiffs' successor liability is **DENIED**.

## II.    Plaintiffs' Alternative Motion to Amend Complaint

Plaintiffs make numerous references to their ability to amend their Second Amended Complaint if the Court conclude that deficiencies are present.  (ECF No. 38-1, 2.) Plaintiffs argue JCI Defendants will not be prejudiced because a deadline to amend has not been set, the parties are still in written discovery, the parties have not begun depositions, and a scheduling order has not been entered.  (*Id.*) Plaintiffs further argue that they have not altered their primary claims from the original complaints filed in the case, and that "the amendments so far have only dealt with adding and removing parties, adding separate successor liability and miscellaneous legal theories, and removing a reference to federal law. (*Id.*)

JCI Defendants argue that Plaintiffs' Alternative Motion to Amend Complaint is the Plaintiffs fourth attempt to correct their deficiencies. (ECF No. 40, 1.) JCI Defendants argue that Plaintiffs provided no hint as to the substance of any proposed amendments. (*Id.*) Thus, Plaintiffs are improperly seeking leave to submit an "unknown, unseen, potential future complaint if the Court finds Plaintiffs' Second Amended Complaint is deficient." (*Id.*)

The burden of pleading sufficient facts rests with Plaintiffs. *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 779 (E.D. Ky. 2017). "[A] party may amend its pleading only

with the opposing party's written consent or the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be denied when the Court finds "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Morse*, 290 F.3d at 800; *see also Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 690 (6th Cir. 2003). Pursuant to Local Rule 7.2(a)(1)(B), failing to include a certificate of consultation with a motion may be deemed good grounds for denying the motion.

In the instant case, Plaintiffs have had three opportunities to amend their complaint.[16] Despite Plaintiffs not altering their primary claims from the original complaints, the Court finds Plaintiffs have had multiple opportunities to cure deficiencies. The Court is aware of its discretion to freely give leave when justice so requires. However, given Plaintiffs' repeated attempts to amend their complaint in this case, the Court finds that having another opportunity is not justified. Given the number of years since the filing of Plaintiffs' first complaint, any additional amendments from Plaintiffs would unduly prejudice JCI Defendants. Accordingly, Plaintiffs' Alternative Motion to Amend Complaint is **DENIED**.

## CONCLUSION

JCI Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **DENIED** in part and **GRANTED** in part. JCI Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' Negligence *Per Se* claims as well as to Plaintiffs who serve as business entities in Count 2 and

---

[16] Plaintiffs First Amended Complaint was filed on November 18, 2018. *See* First Am. Compl., *Adams v. Adient US LLC*, No. 1:18-cv-01179-JDB-egb (W.D. Tenn. Nov. 18, 2019) (ECF No. 38)). Plaintiffs' original complaint was filed on August 2, 2018. (ECF No. 1-1, 4-33).

Count 3 of the negligent and intentional infliction of emotional distress claims.  Also, Plaintiffs'
Alternative Motion to Amend Complaint is **DENIED**.

      **IT IS SO ORDERED** this 12th day of September, 2022.

                    **_s/John T. Fowlkes, Jr._**
                    JOHN T. FOWLKES, JR.
                    UNITED STATES DISTRICT JUDGE