IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CHARLES E. ADAMS, et al., | ) |
| Plaintiffs, | ) No. 1:20-cv-01197-JTF-jay |
| v. | ) |
| ADIENT US LLC, et al., | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION REQUIRING PLAINTIFFS TO COMPLY WITH THE OCTOBER 18, 2022 SCHEDULING ORDER AND LIMIT THEIR INITIAL PLAINTIFF GROUP SELECTION TO 25 PLAINTIFFS**

Before the Court is Defendants Hoover Universal, Inc., Adient US LLC, and Johnson Controls, Inc.'s (collectively, "Defendants") Motion For Order Requiring Plaintiffs to Comply with the Scheduling Order, filed on January 30, 2023. (ECF No. 68.) Plaintiffs filed a Response in opposition on January 31, 2023. (ECF No. 72.) The Court held a hearing on the Motion on February 2, 2023, at which argument was heard from both sides. (ECF No. 74.) For the below reasons, the Motion is **GRANTED**.

**I.   BACKGROUND**

Detailed facts are not necessary for the present motion. This case is a mass tort case revolving around certain property and individual torts alleged by the Plaintiffs against the Defendants for their alleged role in the unsafe and harmful disposal of hazardous chemicals.

On October 18, 2022, the Court entered a Scheduling Order governing pre-trial deadlines and practices. (ECF No. 61.) The Scheduling Order stated the following: "The parties have agreed upon a case management plan and schedule in which the litigation will proceed in two phases, the first with a limited, 50 Plaintiff group (25 chosen by Plaintiffs and 25 by Defendants)." (*Id.*) This

approach was viewed as expedient by the Court given that "346 of the original 450 plaintiffs" remained following the Court's ruling on an initial Motion to Dismiss. (*Id.*) The Scheduling Order also stated that "[s]cheduling relating to the remaining plaintiffs, including mediation, will be determined after judgment on the claims of plaintiffs in the 50 Plaintiff group." (*Id.*)

The Motion states that the parties "exchanged their proposed Plaintiff selection lists on January 18, 2023." (ECF No. 68, 1.) The Defendants selected 25 individual plaintiffs. (ECF No. 68-2, 2.) However, the Plaintiffs selected 38 individual plaintiffs, listing certain pairings of two individuals under one spot. (ECF No. 68-3, 2.) Defendants e-mailed the Court requesting a hearing to resolve this conflict, and subsequently filed a Motion that briefed the issue further. In their Response to the motion, Plaintiffs stated that "Tennessee Supreme Court decisions make it abundantly clear that husband and wife owning property in Tennessee hold title as a tenancy by the entireties and any action which will or may affect the present rights of the parties in the property requires the joinder of both spouses, inasmuch as under the law, they are considered 'but one person.'" (ECF No. 72, 3.) They argued, then, that their selection of 38 individuals was a correct designation of "25 plaintiffs" under Tennessee law.[1]

The Court held a hearing on the Motion on February 2, 2023. (ECF No. 74.) At the hearing, the Defendants argued that the Scheduling Order was best read as creating an initial plaintiffs' group of 50 individual plaintiffs, and that the law regarding tenancy by the entireties was irrelevant due to the present order dealing with discovery, rather than pleading, and because many of the Plaintiffs' claims are individual claims not affected by tenancy by the entireties. Plaintiffs argued

---

[1] At the hearing, Defendants' counsel stated that a few of the double designations were not of married couples at all, and instead reflected relationships such as brother and sister, mother and daughter, and a married couple who owned two different properties or had separate interests. Plaintiffs counsel responded by noting that any such mistake could be corrected.

that the individual claims are nevertheless derivative of the property claims, which are joint claims held by married couples in tenancy by the entireties, making both spouses necessary parties.

## II.    LEGAL ANALYSIS

Resolving the present case involves interpreting the Court's prior Scheduling Order in light of the briefings and arguments at presented at the hearings. The Court agrees with Defendants that the Scheduling Order creates an initial plaintiff group of 50 individual plaintiffs, with 25 selected by the Defendants and 25 selected by the Plaintiffs.

First, the Plaintiffs argument rests on inapposite case law. It is true that married couples hold property in a tenancy by the entireties under Tennessee law. *Trent v. Mt. Commerce Bank*, 606 S.W.3d 258, 262 (Tenn. 2020). It is further true that because of this, married couples alleging a tort against property that they hold in a tenancy by the entireties must jointly file that claim. *Robinson v. Trousdale Cnty.*, 516 S.W.2d 626, 632 (Tenn. 1974). It is finally true that that has been done here; no one has alleged that any of the plaintiffs whose property tort claims are based on alleged harms to property held in a tenancy by the entireties has not filed that claim jointly with their spouse. However, this legal arrangement under Tennessee law has no bearing on the designation of individual Plaintiffs into an initial Plaintiff group for purposes of discovery in federal court. The Scheduling Order is clear that it is counting plaintiffs as individuals. Indeed, it notes that "346 of the original 450 plaintiffs" remain in the case, a number that would be inaccurate were the Court considering married couples holding property relevant to the case in a tenancy by the entireties to be "one plaintiff." Plaintiffs state that it was not incumbent upon them to clarify that they considered married couples holding property relevant to the case in a tenancy by the entireties to be one plaintiff since that is the default understanding under Tennessee law, a point that the Court does not agree with outside of certain pleading issues in specific cases. But even

3

were that true, the language of the Order was clear that the Court was utilizing a different definition of "plaintiff."

Second, the Plaintiffs' proposed definition would defeat the practical purpose for which the Court entered the Scheduling Order. The Order was premised on an initial 50 Plaintiff group for purposes of "an efficient approach to litigation[.]" (ECF No. 61, 1.) The Plaintiffs' approach would lead to at least an additional 20 individuals on which to conduct discovery, an increase by nearly 50 percent above the 50 individuals the Scheduling Order initially stated.[2] An increase of this magnitude would not be done through an unspoken inflation, but explicitly stated by the Court. Resolving this issue would also involve supplemental discovery into the actual property relationship between the listed plaintiffs; as Defendants have noted, disagreement has already arisen about the relationship between many of the double designees. (ECF No. 68-1, 3.) This would further delay the case and undermine the purpose of the Scheduling Order, which was to allow for efficient discovery and litigation by focusing on a subset of the individual plaintiffs.

Third, Defendants are correct that a sizeable portion of the Plaintiffs claims are not premised on torts to property held in tenancy by the entireties, but instead on individual torts and damage such as battery, mental anguish, and nuisance. Such claims require individual discovery, regardless of whether they are in a sense "derivative" of property ownership, and thus an individual approach to the Plaintiffs' groups is best suited. A husband may be able to testify as to the joint claims, but cannot directly testify to his wife's mental anguish, and vice versa.

Finally, the Court would be remiss in not noting that the Scheduling Order sets procedure and deadlines in only the first phase of this complex, massive litigation. As noted in the Scheduling

---

[2] At the hearing, the Plaintiffs stated that the approach would lead to only an additional 12 or 13 depositions, but Defendants stated that adopting the approach would lead to a reevaluation of their own selections, which would likely increase the amount of additional depositions to at least 23 depositions.

4

Order, scheduling of further plaintiffs "will be determined after judgment on the claims of plaintiffs in the 50 Plaintiff group." (ECF No. 61, 2.) Nothing in the Scheduling Order prevents the future testimony of a spouse not designated in this group, and indeed two spouses may still be listed as part of the group by either side. The Court is not dismissing their claims, but merely determining a process by which those claims will be heard. That process, as clearly stated, involves both sides first selecting 25 individual plaintiffs each for purposes of initial discovery.

### III.  CONCLUSION

For the above reasons, the Defendants' Motion is **GRANTED**. Further, the Defendants' Motion to File a Sur-Reply in the present case is **DENIED AS MOOT**. For purposes of the Court's October 18, 2022 Scheduling Order, the term "Plaintiff" shall mean one natural person, or one organizational entity, as individually listed in the Second Amended Complaint. At the hearing, the parties indicated that compliant lists of 25 selected individual plaintiffs could be submitted within the next week. The Court expects the parties to keep to this timeline and submit complaint selections expediently.

**IT IS SO ORDERED** this 20th day of March, 2023.

*s/John T. Fowlkes, Jr.*
**JOHN T. FOWLKES, JR.**
**UNITED STATES DISTRICT JUDGE**
