# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| **CHARLES E. ADAMS, et al.,** | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:20-cv-01197-JTF-jay |
| v. | ) ) | |
| **ADIENT US LLC, et al.,** | ) ) ) | |
| Defendants. | ) | |

## ORDER ADDRESSING MOTIONS TO SUBSTITUTE

Nearly six years ago, Plaintiffs commenced this environmental mass tort action in the Circuit Court of Henderson County, Tennessee. (ECF No. 1-1, 2.) Since then, the case has moved at a glacial pace. Now before the Court are four motions. First, is Plaintiffs' Supplement in Support of Motion to Substitute Deceased and Incapacitated Plaintiffs ("First Motion to Substitute"),[1] filed on May 23, 2024, to which Defendants responded on June 11, 2024. (ECF Nos. 125 & 132.) Second is Plaintiffs' June 18, 2024 Motion for Leave to File a Reply to Defendants' Response, which Defendants filed a response in opposition to on June 25, 2024. (ECF Nos. 133 & 135.) Third is Plaintiffs' Motion to Substitute Virmeka Jefferson for Her Deceased Parents, Wilbert and Virginia Jefferson ("Second Motion to Substitute"), filed on June 19, 2024; Defendants responded on July 1, 2024. (ECF No. 134 & 139.) Fourth is Plaintiffs unopposed Motion for Leave to File a Reply to this Response, filed on July 8, 2024. (ECF No. 140.) For the reasons set forth below, Plaintiffs' motions for leave to file replies are **GRANTED**; Plaintiffs' First Motion to Substitute

---

[1] The original or first motion to substitute was filed on April 4, 2024. (ECF No. 117.) Defendants responded on April 18, 2024. (ECF No. 120.)

1

is **GRANTED** as to all proposed substitutions except Virmeka Jefferson for the Jeffersons; and Plaintiffs' Second Motion to Substitute is **DENIED**.

## I.  BACKGROUND

This case arises out of injuries allegedly sustained from Defendants' past and ongoing improper storage, discharge release, and inadequate remediation of toxic chemicals because of chemical releases and related conduct at an industrial facility located in Lexington, Tennessee. (ECF No. 57 (citation omitted).) On January 8, 2024, Defendants submitted a suggestion of death for eight plaintiffs. (ECF No. 101.) Plaintiffs timely filed their First Motion to Substitute on April 4, 2024, requesting that seven of the identified deceased Plaintiffs and three deceased Plaintiffs not identified by Defendants be substituted for next-of-kin. (ECF No 117, 2.) They also requested that an incapacitated Plaintiff be substituted with her niece who holds a power of attorney. (*Id.* at 2-3.) Defendants filed a response on April 18, 2024. (ECF No. 120.) There, Defendants argued that the Motion should be denied based on numerous deficiencies in Plaintiffs' motion to substitute. (*Id.*)

On May 9, 2024, the parties appeared for a status conference. During the conference, the Court informed Plaintiffs that it found many of Defendants' concerns with the pending motion to substitute to be well taken and that their proposed reply was inadequate. (*Id.*) The parties agreed that Plaintiffs should have another opportunity to reply and meaningfully address those issues. (*Id.*) Accordingly, the Court permitted Plaintiffs to file a renewed reply, and granted Defendants leave to file a sur-reply. (ECF No. 124.) Plaintiffs filed their renewed reply on May 23, 2024. (ECF No. 125.) As evidenced by their Response, Defendants continue to oppose Plaintiff's Motions. (ECF No. 132.) Specifically, Defendants maintain that Plaintiffs have still not made the affirmative showing required to perform a substitution, and that Plaintiffs improperly inserted a substitute for

2

two deceased plaintiffs in their "renewed reply." (ECF No. 132, 3 & 8.)  Plaintiffs then sought leave to file a reply to Defendants' Response. (ECF No. 133.) Defendants opposed that motion. (ECF No. 135.)

In response to Defendants' challenge to the propriety of including a substitution of two plaintiffs not mentioned in the First Motion to Substitute, Plaintiffs filed their Second Motion to Substitute on June 19, 2024. (ECF No. 134.) This Motion seeks to substitute Virmeka Jefferson for her deceased parents, Wilbert and Virginia Jefferson. (*Id.* at 1.) Defendants oppose the relief sought therein, contending that the Motion is time-barred and that Plaintiffs have failed to show that Virmeka Jefferson is the proper party. (ECF No. 139, 3-9.) In Plaintiffs' proposed Reply attached to their unopposed Motion for Leave to File a Reply, they argue that the motion is timely because the substitution limitations period begins to run once suggestion of death is made on the record, and that Virmeka is the proper party. (ECF No. 140.)

## II.     LEGAL STANDARD

A request for substitution is made pursuant to Federal Rule of Civil Procedure 25(a)(1) which provides that:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

"The language of Rule 25 is permissive and the decision to substitute a party lies within the sound discretion of the Court." *Turnage v. Oldham*, No. 2:16-CV-2907-SHM-TMP, 2019 WL 5424425, at *1 (W.D. Tenn. Oct. 22, 2019) (quoting *Watts v. Novartis Pharm. Corp.*, No. 08-cv-2354, 2015 WL 1456647, at *4 (N.D. Ohio Mar. 30, 2015)). Rule 25(a)(1) sets forth the procedure for substituting a party, but the survivorship law of the forum state determines whether a claim

brought under state law survives a plaintiff's death. 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1954 (3d ed. 2019). Provided that the action survives the plaintiff's death, the proper party inquiry is similarly a substantive issue for which state law provides the rule. *See Watts v. Novartis Pharm. Corp.*, No. 08-cv-2354, 2015 WL 1456647, at *4 (N.D. Ohio Mar. 30, 2015) (quoting *In re Baycol Products Litigation*, 616 F.3d 778, 783 (8th Cir. 2010)).

In Tennessee, "[n]o civil action commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party, but may be revived." Tenn. Code Ann. § 20-5-102. Revival by heirs of the decedent, as sought here, is permissible "if no person will administer on the estate of a deceased plaintiff." Tenn. Code Ann. § 20-5-104. A decedent's heirs include "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." Tenn. Code Ann. § 31-1-101(5) "Because the survival statute abrogates the common law rule, the statutory method for preserving either an existing action or a vested cause of action not yet commenced must be strictly followed." *Timmins v. Lindsey*, 310 S.W.3d 834, 840 (Tenn. Ct. App. 2009) (citations omitted). Tennessee courts have held that for an heir to revive an action under § 20-5-104, she must make an "affirmative showing" that no person is willing or available to administer the estate of the deceased litigant. *Dubis v. Loyd*, 540 S.W.3d 4, 9 (Tenn. Ct. App. 2016) (citing *McDonald v. City of Nashville*, 114 Tenn. 540, 86 S.W. 317 (1905)). The caselaw provides little guidance as to what "an affirmative showing" requires, beyond stating that such a showing would rely upon "affidavits or other evidence tending to show that no person was willing to administer [the estate]." *Id.* at 11.

### III. ANALYSIS

As things stand with respect to the First Motion to Substitute, the dispute is centered on proof necessary to satisfy the substitution requirements set forth in Tenn. Code Ann. § 20-5-104. Thus, the Court will first address Defendants' arguments pertaining to all proposed substitutes. Thereafter, each category of proposed substitutions will be addressed, recognizing that the Jeffersons and Sandra Croom will be considered separately because each presents a unique evidentiary issue.

#### A. Whether Substitution Requires a Real Party in Interest Analysis or Appointment of an Administrator *Ad Litem*

In their First Motion to Substitute and accompanying affidavits, all but one of Plaintiffs' proposed substitutes are described as being heirs to the decedents. (ECF No. 125.) According to Defendants, that relationship does not satisfy the requirements for substitution. They maintain that Plaintiffs must demonstrate that each proposed substitute is the sole heir for each decedent, or appoint an administrator *ad litem* under Tenn. Code Ann. § 30-1-109. This would protect Defendants from the possibility of other heirs seeking to relitigate the claims in the future. (ECF No. 132, 4-8.) Much of Defendants' argument relies on an expansive interpretation of the holding in *Guyear v. Blalock*, No. M2012-01562-COA-R3CV, 2014 WL 3697564, at *4 (Tenn. Ct. App. July 23, 2014). The Court considers the relevance of that case below.

In *Guyear*, a widow sued to collect the unpaid balance on a promissory note belonging to her late husband. *Id.* at *1. She first attempted to do this by suing in the name of her husband's estate, even though the estate had never been opened. *Id.* When that was unsuccessful, she amended her complaint to reflect that she was suing in her capacity as the decedent's wife and next friend. *Id.* The note's obligors sought dismissal based on the widow's failure to demonstrate that she was a proper plaintiff, or had any right to collect on the note. *Id.* The obligors prevailed in the

5

trial court and on appeal. *Id.* The widow then argued that she and the deceased were business partners, and as the only surviving member of the partnership, she had become the sole owner of the note. *Id.* at *3. She believed that this theory gave her the right to collect on the note in her own name and/or on behalf of the partnership. *Id.*

With respect to the widow suing in her capacity as the only surviving member of the partnership, the trial court dismissed the complaint because "[c]ases going back more than 100 years in Tennessee jurisprudence had held that such a note is an asset of the deceased's estate and can only be collected by the properly appointed personal representative of the estate." *Id.* (citations omitted). On appeal, the Tennessee Court of Appeals conducted a real party in interest analysis to resolve issues specific to the promissory note and to reconcile the numerous inconsistent theories that plaintiff was pursuing. *Id.* at *4. The court of appeals reasoned that although the widow had some rights to her deceased husband's property, she could not be his sole heir in the absence of a probated will because the decedent's daughter would be entitled to a share. *Id.* Without any definitive proof that the widow could take the promissory note free and clear of the daughter's interest, the court held that the widow had not established ownership of the note that belonged to the estate under Tennessee law, meaning that she lacked standing to sue for the debt. *Id.*

Defendants read *Guyear* to mean that a substitute must be either the decedent's estate administrator, sole heir, or appointed administrator *ad litem* under Tenn. Code Ann. § 30-1-109. (ECF No. 132, 5-6.) Plaintiffs argue that *Guyear* does not pertain to substitution under Tenn. Code Ann. § 20-5-104, which is the rule at issue in this case. (ECF No. 133-2, 1.) In support, they point out that no case addressing substitution under Tenn. Code Ann. § 20-5-104 has held that the requirements set forth in *Guyear* are applicable. (*Id.* at 2.) Although Plaintiffs concede that the *Dubis* court cited *Guyear* in recounting the history of Tennessee's revival rule, Tenn. R. Civ. P.

25.01(1), Plaintiffs contend that this was non-binding dicta. (*Id.*) Regardless of *Guyear*'s applicability, Plaintiffs conclude that appointment of an administrator *ad litem* under Tenn. Code Ann. § 30-1-109, is not a requirement of Tenn. Code Ann. § 20-5-104. (*Id.* at 2-3.)

The Court does not find *Guyear* applicable to this case for two reasons. First, *Guyear* does not involve substitution under Tenn. Code Ann. § 20-5-104. Second, as reflected in the analysis above, the Tennessee Court of Appeals conducted a real party in interest analysis for reasons that were specific to the facts of *Guyear*. Defendants make no attempt to explain how those facts relate to the case at hand. Defendants' arguments regarding the applicability of Tenn. Code Ann. § 30-1-109, are similarly without legal support. For these reasons, the Court does not read any of *Guyear*'s requirements into Tenn. Code Ann. § 20-5-104.

### B. Proposed Substitutions (1)-(9)

In their First Motion to Substitute, Plaintiffs seek to substitute: (1) Donna Cagle for Jeff Cagle; (2) Linda Ferrington for Shelby Ferrington; (3) Jeanette Guider for Geneva Williams; (4) Doris Carrington for Freddie Carrington; (5) Tammie Todd for Patricia Britt; (6) James Nicks for Evelyn Nicks; (7) Allison Nicole Woods for Brandon Woods; (8) Donna Ross for Mary Lou Davis; (9) Carrie Lovins Jones for Margie Lovins Wigginton; (10) Virmeka Jefferson for Wilbert Jefferson; (11) Virmeka Jefferson for Virginia Jefferson; and (12) Rachel Arnold for Sandra Croom. (ECF No. 125, 4-8.) The Court considers proposed substitutions (1)-(9) below.[2]

For each of the proposed substitutions (1)-(9), there is a supporting affidavit from the proposed substitute stating generally that an estate was not opened for the deceased, that no one is willing or interested in opening an estate, and that they are an heir to the deceased. (*See generally*

---

[2] The Court does not consider the inconsistencies that Defendants identify in proposed substitute Linda Ferrington's affidavits, because it appears that Ferrington merely made a mistake that she corrected in her subsequent affidavit (ECF No. 132, 3.) Furthermore, the inconsistency does not affect the Court's disposition.

7

ECF Nos. 125-1 – 125-11.) Defendants take issue with the fact that the substitutes are not the deceased Plaintiffs' only heirs. (ECF No. 132, 11-15.) This could be a problem if the Court were to apply the rule from *Guyear*. However, as explained above, the Court does not find *Guyear* to be applicable. Plaintiffs need not show that the proposed substitutes are the sole heirs of the deceased to meet their burden under Tenn. Code Ann. § 20-5-104.

Each affidavit sets forth the requirements for substitution under Tenn. Code Ann. § 20-5-104. Moreover, Defendants do not dispute that Plaintiffs have failed to comply with the procedural requirements set forth in Fed. R. Civ. P. 25. Consistent with these findings, the Court **GRANTS** the First Motion to Substitute with respect to proposed substitutes (1)-(9).

### C. Proposed Substitutions (10) & (11)

Proposed substitutions (10) and (11) are factually nearly identical to proposed substitutions (1)-(9); husband and wife Wilbert and Virginia Jefferson have passed away, neither had a will, and no person is willing or available to administer their estates. (ECF No. 125, 7-8.) Plaintiffs therefore seek to substitute their daughter, Virmeka Jefferson, who is their primary heir under Tennessee intestate succession laws. (*Id.*)

Defendants raise two arguments in objection to these proposed substitutions. The first relies on the same arguments relative to Tennessee's survivorship law that the Court has already considered and rejected. (ECF No. 132, 7-8.) The Court rejects the argument here as well. Their second argument is that the motion should be denied as to the Jeffersons because plaintiffs failed to seek these substitutions in their initial motion back on April 4, 2024. (*Id.* at 8.) Defendants insist that this is fatal to the motion because Plaintiffs had 90-days from the day Defendants filed the Suggestion of Death as to the Jeffersons, January 8, 2024, to move for substitution under Fed. R.

Civ. P. 25(a)(1). If that is so, the deadline to move for substitution would have been on April 7, 2024, meaning that the motion is untimely.

Plaintiffs presumably filed their Second Motion to Substitute to assuage any concerns that they were "sneaking" the Jefferson substitutions in via their supplement. (ECF No. 134.) Defendants responded to this motion, making largely the same arguments that they made in their initial response, and Plaintiffs sought leave to file a reply. (ECF Nos. 139 & 140-2.) Because the Court has already considered and rejected Defendants arguments pertaining to *Guyear*, the Jefferson substitution comes down to the timeliness issues.

The parties dispute whether the clock had started for Plaintiffs to file motions for substitution as to the Jeffersons. Federal Rule of Civil Procedure 25(a)(1) advises that "If the motion [for substitution] is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). Defendants contend that the clock started on January 8, 2024, when they filed suggestions of death on the record for Wilbert and Virginia Jefferson. (ECF No. 101.) Plaintiffs point to several cases that appear to hold that Rule 25(a)(1)'s clock starts when parties and nonparty successors are served with the notice. (ECF No. 134-1, 3-4.) However, Plaintiffs fail to acknowledge that these cases rest on a crucial distinction. In one of the leading cited cases, *Atkins v. City of Chicago*, Judge Posner concluded that although the general rule was that a nonparty must be served with notice for the 90-day clock to start running, the filing of a suggestion of death is sufficient to start the clock where the opposing party files that suggestion and does not know who the successor or representative to be noticed is. 547 F.3d 869, 873 (7th Cir. 2008) (collecting cases) (citing *George v. United States*, 208 F.R.D. 29, 32 (D.Conn.2001)); *see also George v. United States*, 208 F.R.D. 29, 32 (D. Conn. 2001) (same). That exception makes sense, insofar as it puts the burden on the

9

party who is in the best position to know the identity of the interested nonparty to be served with notice, counsel for the deceased.

Defendants contend that the exception recognized in *George* is relevant here. The Court agrees. Defendants filed the suggestion of death for the opposing parties, the Jeffersons, and could not reasonably be expected to know the identity of any interested nonparty to whom notice should be served. The 90-day clock to move to substitute the Jeffersons therefore started on January 8, 2024, when Defendants filed the Suggestion of Death. (ECF No. 101.) If Plaintiffs were having difficulty identifying the nonparties themselves, they could have filed a motion for extension of time within the 90-day window. They did not. The Court need not resolve whether Plaintiffs' first request to substitute the Jeffersons within their supplement filed on May 23, 2024 suffices as a motion to substitute, or if their June 19, 2024 filing is the only operative motion to substitute because the motion would be untimely either way. Although dismissal of actions on timeliness grounds may seem harsh, it is worth noting that the Jeffersons both passed away nearly four years ago. Plaintiffs' counsel had far more than the 90-days contemplated in Rule 25(a)(1) to arrange for a proper substitution.

Plaintiffs' Second Motion to Substitute is **DENIED.** Because the Court does not grant substitutions as to Wilbert and Virginia Jefferson, their claims must be **DISMISSED**.

### D. Proposed Substitution (12)

Plaintiffs seek to have Rachel Arnold substituted for plaintiff Sandra Croom. (ECF No. ECF No. 125, 11.) This request differs from the other putative substitutions insofar as Sandra Croom is not deceased. (*Id.*) Plaintiffs submit that Croom has advanced dementia, rendering her incapacitated. (*Id.*) As such, Plaintiffs seek to substitute Rachel Arnold, her niece with a power of attorney, pursuant to Fed. R. Civ. P. 17. (*Id.*) Defendants do not oppose this substitution so long

10

as Arnold is appointed as Croom's General Guardian pursuant to Fed. R. Civ. P. 17(c)(1)(A).  (ECF No. 132, 2.)

Federal Rule of Civil Procedure 25(b) provides that "[i]f a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative." Fed. R. Civ. P. 25(b).

An incompetent person without a "duly appointed representative," such as a conservator, may sue by a next friend or by a guardian *ad litem*. Fed. R. Civ. P. 17(c)(2). "The court must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). Because the "purpose of Rule 17(c) is to protect an incompetent person's interests in prosecuting or defending a lawsuit," the Court has "broad discretion to fashion an appropriate safeguard that will protect an incompetent person's interest." *Harris v. Mangum*, 863 F.3d 1133, 1138 (9th Cir. 2017) (citing Davis v. Walker, 745 F.3d 1303, 1310 (9th Cir. 2014); *see also Mate v. Fields*, No. 16-2730, 2017 WL 6398028, at *2 (6th Cir. June 20, 2017) (same).

The Court finds that it is appropriate to appoint a guardian *ad litem* to represent Croom in this action. Upon review of Rachel Arnold's verified statement and the Durable Power of Attorney instrument, Rachel Arnold appears fit to serve as Croom's guardian *at litem* in this action. Pursuant to Fed. R. Civ. P 17(c)(2), Rachel Arnold is hereby appointed as Croom's guardian *at litem*, and substituted for Croom via Fed. R. Civ. P. 25(b). Consistent with this decision, the Court **ORDERS** that the caption be amended to reflect Croom's involvement in this action as "Sandra Croom, an incapacitated person, by and through Rachel Arnold, as Guardian *Ad Litem*."

## IV. CONCLUSION

Consistent with the foregoing, Plaintiffs' motions for leave to file replies are **GRANTED**; Plaintiffs' First Motion to Substitute is **GRANTED** as to all proposed substitutions except Virmeka Jefferson for the Jeffersons; and Plaintiffs' Second Motion to Substitute is **DENIED**. Because the Court does not grant substitutions as to Wilbert and Virginia Jefferson, their claims must be **DISMISSED**. The following substitutions are approved:

(1) Donna Cagle for Jeff Cagle;
(2) Linda Ferrington for Shelby Ferrington;
(3) Jeanette Guider for Geneva Williams;
(4) Doris Carrington for Freddie Carrington;
(5) Tammie Todd for Patricia Britt;
(6) James Nicks for Evelyn Nicks;
(7) Allison Nicole Woods for Brandon Woods;
(8) Donna Ross for Mary Lou Davis;
(9) Carrie Lovins Jones for Margie Lovins Wigginton; and
(10) Rachel Arnold for Sandra Croom.

**IT IS SO ORDERED**, this 25th day of September, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
